UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| JAMIE HOUSEKNECHT, | : | |
| --- | --- | --- |
| Plaintiff, | : | CIVIL ACTION NO. 3:08-0482 |
| v. | : | (CAPUTO, D.J.) |
| | | (MANNION, M.J.) |
| SANDRA BRULO, *et al.*, | : | |
| Defendants. | : | |

## **REPORT AND RECOMMENDATION**[1]

Presently before the Court is defendants Sandra Brulo, Walter Symons, and Tom Lavan's motion to dismiss the amended complaint. *See* Doc. No. 25 (the "Amended Complaint"); Doc. No. 53 (the "Motion"), Doc. No. 54 (opening brief). Plaintiff's opposition brief was due April 13, 2009. However, plaintiff failed to file a brief; rather, he filed a motion requesting an extension of time to file an opposition brief. *See* Doc. No. 66. This request was granted. *See* Doc. No. 69. The Court extended plaintiff's time to file an opposition brief to May 15, 2009. Nevertheless, plaintiff has failed to file any timely opposition brief or to request a further extension.[2]

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted. No endorsement of any provider of electronic resources is intended by the Court's practice of using hyperlinks.

[2] On July 9, 2009, well after the May 15, 2009, deadline, plaintiff filed Houseknecht Affidavit in Support of Motion for More Definite Statement (unsigned and undated). (Doc. No. 77 at 1.) *See* Cover letter (dated July 6, 2009), (Doc. No. 77-2 at 1); envelope (stamped July 7, 2009), (Doc. No. 77-2 at 3). This document was not titled "brief" or "memorandum of law" or "opposition." It does not appear to be an opposition brief. It came absent any certificate of service indicating that it was sent within the May 15, 2009

After having considered the parties' submissions, federal statutory law and case law, and other persuasive authority, and for the reasons elaborated below, the Court will **RECOMMEND GRANTING** the Motion.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Jamie Houseknecht's four-count Amended Complaint, (Doc. No. 25), makes the following factual allegations.

> 1. The Plaintiff, Jamie Houseknecht, resides at the 165 [State Correctional Institution] Lane, Greensburg, PA 15601-9103.
> ....
> 20. On January 13, 1997, Plaintiff was arrested and charged by the Dallas Township Police for an incident he was involved in relating to starting a fire at Dallas Highschool.
> 21. After making a threat to kill himself to his counselor, Karen Boonan, and an actual suicide attempt Plaintiff signed himself in the Psychiatric Unit at First Hospital of Wyoming Valley on January 14, 1997.
> 22. On or about January 27, 1997, Defendant Brulo asked Plaintiff to sign a number of Release of Information Forms so she could have access to the Records from each of Plaintiff's prior psychiatric hospitalizations and involvement with Children's Service Center.
> 23. After expressing concerns Plaintiff had with regard to privileged and confidential information contained in these records and asking if they would be kept or destroyed, Defendant Brulo assured Plaintiff that the information gleaned from the Records would be used solely for determining his risk to the community, the need for further participation in counseling and her recommendation for the disposition of the [then] pending charges against Plaintiff.
> 24. Defendant Brulo further advised Plaintiff that the information gleaned from his Records would be kept strictly confidential and the Records would be turned over to be destroyed.
> 25. On April 26, 2004, Plaintiff plead guilty [the **"2004 Plea"**] to

---

deadline. To the extent it makes objections, it does in regard to Sections II[D] and II[E] of movants' brief. Movants' arguments in Sections II[D] and II[E] are not discussed in this report and recommendation.

2

charges of Attempted Involuntary Deviate Sexual Intercourse, Indecent Assault and Aggravated Indecent Assault for which an Assessment was completed by Defendant Dickson on July 9, 2004, and Plaintiff was sentenced as a sexually violent predator on December 1, 2004.

26. On March 7, 2006, Plaintiff fired his appellate counsel, Andrea Mertz, and requested her to forward to him a copy of all the documents accumulated in his case up to that point.

27. Plaintiff received the Records from his appellate counsel on March 31, 2006 [the "**March 2006 Records**"], and after reviewing this file Plaintiff discovered that in February 1999, Defendant Brulo divulged to Defendants Fabian, Riley, and Thompson his Psychiatric and Psychological Records [the "**1997 Psychological Records**"] [for which] Plaintiff signed the Release of Information Forms on or about January 27, 1997, and which Defendant Brulo assured Plaintiff would be destroyed and the information gleaned from would be kept strictly confidential and again [Brulo] divulged the same Records to Defendant Doe (Defendant Number 13) on June 3, 2004.

....

29. Plaintiff further discovered after reviewing the file he received from his appellate counsel that on June 3, 2004, Defendant Brulo also divulged Plaintiff's Treatment Records [the **"2000 Treatment Records**"] from his incarceration at the Northwestern Academy Intensive Secure Treatment Unit ("**NWAISTU**") from February 1999, to September 2000, to Defendant Doe (Defendant Number 13).

....

31. The Megan's Law Assessment completed by Defendant Dickson on July 9, 2004, relied heavily on false information contained in Plaintiff's [1997] ... Psychological [Records] and [the 2000] Treatment Records divulged by Defendant Brulo in determining that Plaintiff fits the criteria of a sexually violent predator.

Interestingly, plaintiff makes no express allegation and provides no information implying that at the time of the relevant events (particularly those relating to the releases he gave Brulo), he acted subject to any incapacity or disability precluding him from validly consenting to the release of these materials. Rather, his claim, at most, argues that he gave a limited consent,

3

or that he was misled into giving an over-broad consent by defendant Brulo's assurances. Thus the gravamen of Count 1 is that Brulo wrongly and without having received from plaintiff a valid consent turned over plaintiff's privileged and confidential 1997 Psychological Records to Fabian, Riley, and Thompson, and also turned over plaintiff's confidential 2000 Treatment Records to defendant Doe. Doe subsequently turned both sets of records over to (former) defendant Dickson (since dismissed from this action). *See* Amend. Compl. ¶ 45. (Doc. No. 19.)

Count 4 expands upon the factual allegations in Count 1. In Count 4, plaintiff alleges that in 2004, defendant Doe asked Brulo for plaintiff's juvenile probation file. Brulo sent defendant Doe both the 1997 Psychological Records and the 2000 Treatment Records. Doe subsequently turned over these materials to (former) defendants Assistant District Attorney West, Joyce [a public defender – who apparently worked for a co-defendant named Kerns], and Dickson. (Like Dickson, defendants West and Joyce have been dismissed from this action.) Plaintiff alleges that these defendants (and former defendants) engaged in a conspiracy, the purpose of which was to secure a criminal conviction against him (but which instead resulted, not in a conviction, but in the 2004 Plea and Dickson's subsequent sentencing assessment).

In Count 2, plaintiff alleges that after reviewing the file he received from counsel, the March 2006 Records, he discovered that Brulo (again) divulged his 1997 Psychological Records to defendants Fabian, Riley, and Thompson,

one or more of whom, subsequently redivulged them to defendants Rutt, Felty, Thew, and McDonald. Amend. Compl. ¶¶ 34-35. (Doc. No. 19.)

In addition to the wrongful disclosure claim, in Count 2, plaintiff also alleges that defendants Symons, Lavan, Fabian, Riley, Thompson, Rutt, Felty, Thew, and McDonald made a series of false statements and reports against plaintiff to Luzerne County Juvenile Probation and (former) President Judge Mark A. Ciavarella, Jr. in retaliation against plaintiff's attempts to "litigate incidents of abuse" at NWAISTU. Amend. Compl. ¶ 33. (Doc. No. 19.)

Thus Count 2 makes two somewhat unrelated claims (albeit brought generally against the same defendants) – one connected to wrongful disclosure, *id*. ¶¶ 34-35, and the other a retaliation claim and a slander or libel or defamation claim, *id*. ¶¶ 32-33, 54.

Like Count 2, Count 3 also seems to allege two distinct claims. Plaintiff alleges that in 1999, while in the Luzerne County Juvenile Detention Center, he broke his hand, but received no treatment. After his transfer to NWAISTU in 1999, a specialist advised plaintiff that it healed incorrectly and he would need to rebreak his hand and have a wire placed in it. Here plaintiff is making an Eighth Amendment medical malpractice claim. *Id*. ¶¶ 36-41. Plaintiff also allegedly discovered from the March 2006 records that defendant Roman wrote a letter to state officials intimating that the injury occurred at NWAISTU, rather than at the Luzerne facility. Given that the allegations here are false, it is difficult to characterize the injury as wrongful disclosure. Plaintiff alleges

that this was a Fourteenth Amendment due process violation. Amend. Compl. ¶¶ 42, 58.

Plaintiff asserts a variety of legal theories, including Section 1983 (civil rights violation) and (apparently) Section 1985 (conspiracy) in relation to constitutional rights, e.g., due process, First Amendment, Eighth Amendment, and Fourteenth Amendment rights, and in relation to statutory rights, e.g., Federal Health Insurance Portability Privacy Act. Plaintiff also asserts a variety of state law theories of liability, i.e., alleging that defendants' conduct "violated PA State Disclosure Statements governing medical Records, [and] PA State Privacy Laws." Amend. Compl. ¶ 51. Among other relief sought, plaintiff seeks damages, compensatory and punitive, and injunctive relief.[3]

## II.     LEGAL STANDARD

*Motion to Dismiss Standard Under Rule 12(b)(6).* The defendants' motions to dismiss are brought pursuant to the provisions of Fed. R. Civ. P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can granted. The moving party bears the burden of showing that no claim has been stated, [Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005)](), and dismissal is

---

[3] *But see City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (addressing standards for prospective injunctive relief); *Rizzo v. Goode*, 423 U.S. 362 (1976) (same).

6

appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id.* Furthermore, in order satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged

7

in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See, e.g.*, *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

*Motion to Dismiss Standard When Motion Is Unopposed*. Where plaintiff has failed to timely serve an opposition brief to a motion to dismiss, the Court will deem the motion unopposed. M.D. Pa. L.R. 7.6 ("Any respondent who fails to comply with this rule shall be deemed not to oppose such motion."). Notwithstanding a party's failure to respond, a Court will not dismiss a pro se plaintiff's complaint merely for his or her failure to serve a timely brief in opposition to defendant's motion to dismiss. *See Stackhouse v. Mazurkiewicz, 951 F.2d 29 (3d Cir. 1991)*. In these circumstances, the Court will review the motion to dismiss under the six-part test enunciated in *Poulis v. State Farm*

8

*Fire & Cas. Co.*, 747 F.2d 863 (3d Cir. 1984). *See also Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1148 (3d Cir. 1990). The six factors outlined in *Poulis* are:

> (1) the extent of the *party*'s personal *responsibility*; (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith*; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions*; and (6) the *meritoriousness* of the claim or defense.

*Poulis*, 747 F.2d at 868 (emphasis in the original).

On the other hand, where a party (without excuse for neglect), including a pro se party, has failed to serve a timely opposition brief or other paper (including a motion for an extension), and such failure is also in disobedience to an express order of the Court requiring the plaintiff to submit the opposition brief or other paper by a particular date, then *Stackhouse* does not squarely apply and the Court may dismiss the Complaint on that basis. *See Stackhouse*, 951 F.2d at 30 ("Nor do we suggest that if a party fails to comply with the rule after a specific direction to comply from the court, the [local] rule [regarding unopposed motions] cannot be invoked."); *cf. Rosado v. Walls*, Civ. A. No. 4:06-2025, 2007 U.S. Dist. LEXIS 40865, at *4-6 & n.3, 2007 WL 1650533 (M.D. Pa. June 5, 2007) (Jones, J.) (granting motion to dismiss and finding it unopposed where a prior Court order expressly warned that failure to serve an opposition brief may result in dismissal); *Noell v. Potter*, Civ. A. No. 05-471, 2007 U.S. Dist. LEXIS 45028, *4-5 & n.4, 2007 WL 1811216

(M.D. Pa. June 21, 2007) (Jones, J.) (granting motion for summary judgment and finding it unopposed where a prior Court order expressly warned that failure to serve an opposition brief may result in dismissal).

*Standard of Review of Substantive Law Under 42 U.S.C. 1983.* Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Section 1983 creates no substantive rights, but rather allows a plaintiff to vindicate violations of rights created by the U.S. Constitution or federal law. *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979); *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006).

*Statute of Limitations Under Section 1983.* Claims under § 1983 are generally subject to a state's statute of limitations on personal injuries. *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 123 n.5 (2005) (citing *Wilson v. Garcia*, 471 U.S. 261, 275, 276 (1985)); *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003). In Pennsylvania, the statute of limitations on

10

bringing a personal injury cause of action is two years. 42 Pa. C.S. § 5524(7) (West 2006); *Garvin*, 354 F.3d at 220.

### III. ANALYSIS

    A.    Failure To Serve An Opposition Brief When Required To Do So By Court Order and Under the Federal Rules

Plaintiff has failed to serve, timely or otherwise, any opposition brief in regard to the Motion. Given that plaintiff was expressly directed to file an opposition brief by the Court, (Doc. No. 69), the Motion will be deemed unopposed under local rule 7.6, and, for that reason, among others, the Court will recommend granting the Motion. *See Stackhouse,* 951 F.2d at 30.

    B.    Failure To Submit A Timely Opposition Brief

As explained, plaintiff has failed to serve an opposition brief in regard to the Motion. In these circumstances, *Poulis*, *supra*, provides the standard of review. In applying *Poulis*, the Court notes that plaintiff has repeatedly delayed prosecuting this action. *Cf.* Rule 41(b); *Link v. Wabash R. R. Co.*, 370 U. S. 626, 630-31 (1962) (noting inherent power of Court to dismiss *sua sponte* in the face of plaintiff's failure to prosecute action). Moreover, for the reasons explained in greater detail below, the Court has determined that plaintiff's case lacks merit. On the basis on these two *Poulis* factors, the Court recommends granting the Motion.

11

C.   Statute Of Limitations

1.   What the Plaintiff Knew and When he Knew It

Plaintiff pled guilty in the Berks County Court of Common Pleas on April 26, 2004. He was sentenced on December 1, 2004, after a sentencing hearing on the same day. *See* Doc. No. 38 (reproducing *Commonwealth v. Houseknecht*, Crim. Div. 276/2004 (Berks County Court of Common Pleas June 17, 2005) (Sprecher, J.) ("Sprecher Slip Opinion")). On January 18, 2005, Houseknecht filed an appeal to the Superior Court from the order of sentence. *See* Berks County Docket at 15.[4] On February 7, 2005, plaintiff filed a "Concise Statement of Matters Complained," *id.* at 16, in response to which Judge Sprecher filed a written opinion on June 17, 2005. *See* Sprecher Slip Opinion; *see also* Pa. R. App. P. 1925(b).Judge Sprecher expressly stated that his opinion addressed the "Matters Complained of on Appeal," including Houseknecht's argument that "the court erred in permitting Mr. Dixon [sic.] to consider certain records in forming his opinion." Sprecher Slip Opinion at 2. Additionally, the Court stated:

> Mr. Houseknecht alleges that, in forming his opinion, Mr. Dickson relied upon records obtained in violation of Mr. Houseknecht's constitutional rights. It appears the records referred to are medical and psychiatric records that were contained in Mr. Houseknecht's juvenile record and were part of his participation in the juvenile probation program. [Hearing Transcript (Dec. 1, 2004)] at 14-17.

---

[4] *See* Court of Common Pleas of Berks County, Commonwealth of Pennsylvania v. Jamie E. Houseknecht, Criminal Docket: CP-06-CR-0000276-2004, at 13-14, http://tinyurl.com/d368uq.

12

Sprecher Slip Opinion at 6. Thus, it appears that Houseknecht had expressly flagged the allegedly wrongful disclosure of his 1997 Psychological Records and his 2000 Treatment records in his February 7, 2005 appellate brief. He was on notice of this cause of action at least by February 7, 2005. Indeed, Houseknecht was on notice of his claim as early as the December 1, 2004 hearing, when (former defendant) Dickson testified.

In regard to both the state causes and the federal causes of action, a two year statute of limitations applies. *See* 42 Pa. C.S. § 5524(7) (West 2006); *Garvin*, 354 F.3d at 220. The original complaint in this action, (Doc. No. 1), was filed March 17, 2008, more than two years after Houseknecht filed his February 7, 2005 brief. *See infra* note 5 (describing application of the prison mailbox rule). This is sufficient grounds to dismiss all the claims relating to wrongly divulged confidences connected to the 1997 Psychological Records and the 2000 Treatment Records, including Counts 1, 2, 3, and 4 in regard to all defendants.

    2.  What Plaintiff's Attorney Knew And When She Knew it

Plaintiff expressly states in his Amended Complaint that he was put on notice of the allegedly wrongful disclosures by Brulo (and others) described in Counts 1, 2, 3, and 4 by his examination of the records he received on March 31, 2006 from his (former) appellate counsel. *See* Amend. Compl. ¶¶ 27, 29, 32, 42, 43-47. Plaintiff had requested this file on March 7, 2006 and instructed counsel to send a "copy of all the documents accumulated in his

13

case *up to that point*." *Id*. ¶ 26 (emphasis added). Thus all the facts which put plaintiff on notice of his causes of action within Counts 1, 2, 3, and 4 were already known to his own counsel. *Information known to one's counsel is imputed to the client. See Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 (1962) (Harlan, J.) ("Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'") (quoting *Smith v. Ayer*, 101 U.S. 320, 326 (1879) (Field, J.)); *Walker v. Sun Ship, Inc.*, 684 F.2d 266, 268-69 (3d Cir. 1982) (Sloviter, J.) (same); *Shenkan v. Potter*, C.A. No. 02-3508, 2003 WL 21649506, at *3 (3d Cir. June 13, 2003) (holding that length of limitations period if known to counsel can be imputed to client) (NOT PRECEDENTIAL). As Judge Shapiro explained, in similar circumstances:

> Even if plaintiffs had met their burden of proving that Mr. Owens personally did not know and through the exercise of due diligence could not have known of the injury caused by defendants until May, 1982, the claims asserted in this action would nonetheless be time-barred because Mr. Owens's agent, Attorney Finn, had sufficient knowledge of the accrual of the claims to start the statute of limitations running in July, 1981.

*Owens v. Lac D'Amiante du Quebec, Ltee.*, 656 F. Supp. 981, 983 (E.D. Pa. 1987); *id*. at 982, 984 (dismissing personal injury action, notwithstanding that Finn was retained as an attorney by Owens in a workers' compensation action). Because Houseknecht's counsel had this information in her file as early as March 7, 2006, (Doc. No. 19, ¶ 26, at 3), then the information in

14

these documents can also be imputed to Houseknecht as of that date. Again, the original complaint in this action, (Doc. No. 1), was filed March 17, 2008,[5] more than two years after March 7, 2006. Thus, Counts 1 and 4 are barred by the statute of limitations.

Count 2 is barred in regard to the any claim connected to the facts alleged in paragraphs 32 and 33.[6] Plaintiff was on notice of these claims through his review of counsel's file.

It is unclear if any cause or causes of action connected to the facts alleged in paragraphs 34 and 35[7] can be dismissed based on statute of

---

[5] Application of the prison mail-box rule would not seem to vary the result. Plaintiff's complaint is stamped March 13, 2008. No other date appears on the complaint, nor is it internally dated.

[6] As explained in Section 1, *supra*, in paragraphs 32 and 33, plaintiff alleges that defendants Symons, Lavan, Fabian, Riley, Thompson, Rutt, Felty, Thew, and McDonald made a series of false statements and reports against plaintiff to Luzerne County Juvenile Probation and (former) President Judge Mark A. Ciavarella, Jr. in retaliation against plaintiff's attempts to "litigate incidents of abuse" at NWAISTU. Amend. Compl. ¶ 33. (Doc. No. 19.) Thus, these paragraphs embrace a retaliation claim and, additionally, a slander or libel or defamation claim, *id*. ¶¶ 32-33, 54. (Doc. No. 19.)

[7] As explained in Section I, *supra*, in paragraphs 34 and 35, plaintiff alleges that after reviewing the file he received from counsel, the March 2006 Records, he discovered that Brulo (again) divulged his 1997 Psychological Records to defendants Fabian, Riley, and Thompson, one or more of whom, subsequently redivulged them to defendants Rutt, Felty, Thew, and McDonald. Amend. Compl. ¶¶ 34-35. (Doc. No. 19.) The wrongdoing here alleged to have been done by Brulo is barred by the statute of limitations. *Id*. (alleging that wrongful disclosure by Brulo took place on "February 1999"). It is unclear from the Amended Complaint when Fabian, Riley, and Thompson

15

limitations grounds. However, the factual allegations in paragraphs 34 and 35 (that is, those factual allegations that do not appear elsewhere in the Amended Complaint), allege wrongdoing by defendants other than Brulo, Symons, and Lavan – thus this report and recommendation need not reach these particular claims.

As for Count 3, the Eighth Amendment Claim should be barred, as plaintiff was aware of his cause of action as early as 1999. In regard to the factual allegations connected to defendant Roman's letter in paragraph 42, plaintiff was apprised of that information through his review of counsel's file. Thus it should be barred on statute of limitations grounds.

The Court is aware of no reason to apply any tolling doctrine in regard to either the state or federal causes of action. *See generally Lake v. Arnold*, 232 F.3d 360 (3d Cir. 2000) (Roth, J.). Amendment of the Amended Complaint, except in regard to a cause or causes of action connected to the factual allegations in paragraphs 34 and 35, would be futile.

### IV. CONCLUSION

For the reasons elaborated above, the Court **RECOMMENDS GRANTING** the Motion. Specifically, the Court recommends:

(A) dismissing Counts 1, 3, and 4 in their entirety and in regard to all

---

engaged in the wrongful disclosure alleged by plaintiff. *Id*. (alleging wrongful disclosure by Fabian, Riley, and Thompson without specifying date).

defendants;

(B) dismissing Count 2 exclusively in regard to the factual allegations and legal theories connected to paragraphs 32 and 33 (including a retaliation claim and, additionally, a slander or libel or defamation claim), but not in regard to paragraphs 34 and 35 (the wrongful disclosure claim against defendants other than the movants);

and,

(C) terminating the movants, defendants Brulo, Symons, and Lavan, from this action.

s/ *Malachy E. Mannion*<br>**MALACHY E. MANNION**<br>**United States Magistrate Judge**[8]

**Dated: August 6, 2009**

O:\shared\REPORTS\2008 Reports\08-0482-01.wpd

---

[8] For the convenience of the reader, the Court has attached copies of unpublished opinions cited within this document.